*BRIGGS*
*v.*
*SIMONDS.*

---

CATHARINE McGUIRE, Tutrix, *v.* KEARNY, BLOIS & Co.

The rule of law is *caveat emptor ;* and, where a party purchases an article, on inspection, he can not afterwards complain of the consequences of his own act.

APPEAL from the Third District Court of New Orleans, *Handlin*, J. *Jacob Barker* for plaintiff.

*Geo. L. Bright for defendants and appellants.*—This is a suit to recover $1,160 20, the balance of the price of oakum sold by Philip McGuire to defendants.

The defendants admit they made the purchase, but allege that, on a previous occasion, they purchased from McGuire a lot of oakum, and when McGuire sold them the oakum, the subject of this suit, he represented it to be of the same quality as that which had been previously bought from him by defendants.   They contend that whether or not the representation of McGuire be proved, the law implies a promise or under‑ taking from him that all goods manufactured and sold by him for a specific purpose, and to be used in a particular way, are reasonably fit and pro‑ per for the purpose for which he professes to make them, and for which they are known to be required; and they allege that the oakum delivered by him was unmerchantable and unfit for use.

The representations of McGuire are established by the witness, *John Murphy*.   He says "he is the warehouseman of the defendants; he recol‑ lects a lot of oakum bought by defendants from Philip McGuire.   It was sent to the warehouse without any person knowing anything about it.   It was sent to Kearny, Blois & Co.'s warehouse.   McGuire sent it there as being equal to a lot previously sold by him to Kearny, Blois & Co.   The way I knew it, was a communication between the warehouseman, Wm. Clooney (now dead), and Philip McGuire, or his clerk ; I can't say which, The communication was in writing."

This evidence was received without objection from plaintiff.   The loss of the written communication is established by the affidavit of Mr. Kearny, which was also admitted without objection.

The facts established by Murphy are supported by the warehouseman's receipt, offered in evidence by plaintiff.   It is signed Kearny, Blois & Co., per William, *i. e.*, William Clooney.   Dyer, McGuire's clerk and agent, says McGuire had sold better oakum to Kearny before ; that the oakum (the subject of this suit) was of a very poor quality; would not call it

oakum, but oakum stock; does not recollect whether Kearny asked him whether it was the same kind of oakum as that which he had previously purchased.

The court will remember that this is the person who made the sale to defendants, and he does not remember whether he made to them any representations at the time of sale. It appears by his evidence that the oakum was unfit for use, and if he made no representation, he must have concealed the true character of the oakum and deceived the defendants.

By the civil law there is an implied warranty in every sale. If the seller knows of a defect in his goods, which the buyer does not know, and if he had known would not have bought the goods, and the seller is silent, his silence is, nevertheless, a moral and legal fraud, and ought to avoid the transaction.

In the case of *Hill* v. *Gray*, 1 Stark. 434, a picture was sold, which the buyer believed had been the property of Sir Felix Agar, a circumstance which might have enhanced its value in his eyes. The seller knew that the purchaser was laboring under this delusion, but did not remove it, and it did not appear that he either induced or strengthened it. In an action for the price, Lord Ellenborough nonsuited the plaintiff, saying the picture was sold under a deception. See Parsons on Contracts, pp. 460, 461. At common law the rule of *caveat emptor* applies, and the party buys at his peril. 2 Kent, p. 478. With regard to the quality or goodness of the article sold, the seller is not bound to answer, except under special circumstances, unless he expressly warranted the goods to be sound and good, or unless he hath made a fraudulent representation or used some fraudulent concealment concerning them, and which amounts to a warranty in law. 2 Kent, 478. But, in Louisiana, the rule of the civil law is different; and, as a general rule, a sale for a sound price is understood to imply a warranty of soundness against all faults and defects. 2 Kent, 480, 481; 1 Martin R. 1.

In *Hosmer* v *Bear & Fox*, 5 An. 36, the plaintiff argued the corn was sold as being damaged and of inferior quality, because it was sold for 68 cents per bushel, when prime corn was selling at 75 cents. The court said, this may show that the corn was not a prime lot, but the defendants were not to infer from the price paid that it was damaged.

The general rule is, the rule of morality, that prohibits every concealment of facts that should be disclosed to the buyer, and every false representation. The exception made by Article 2497, C. C., is not really an exception to the rule, and is unnecessary. That Article provides that "apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices," for, if the defect is apparent, it is disclosed. It only means that where the article is susceptible of convenient examination, the purchaser is bound to make and abide it.

In *Rouzel* v. *McFarland*, 8 Martin, 704, the plaintiff sold to defendant a boat. Shortly after, defendant loaded her and set off for Natchitoches, but on the way she was found to be very leaky; and, on examination, proved to be so rotten that one of the witnesses says he could run his finger into the timber in many places. Mr. McFarland's defence was

that the defects were apparent, and that, in the bill of sale, Rouzel says <span style="float:right">McGuire</span> that he has seen and visited the boat. The court said: but it was his <span style="float:right">*v.*<br>Kearny et al.</span> duty to declare them; and that he knew them is proved by the evidence.

In *Williams* v. *Miller et al.*, 9 La. 134, the court said: The buyers, in the present instance, were deceived by the representations of the quality of the articles sold by the vendor; and whether they were thus deceived by error or design on his part, cannot vary the right of the parties *in foro leyes*, because the defects were not discoverable immediately on inspection; and they were such that it must be supposed that the buyers would not have purchased had they known them. The articles sold were logs.

In *Melançon* v. *Robichaux*, 17 La. 98, it appears that the action was brought to annul the sale of a flatboat fitted up to be used as a ball room, on the ground that, at or before the time of sale, it had defects known to defendant, which he fraudulently concealed from the plaintiff. It appeared that, before purchasing, plaintiff examined the boat and expressed himself satisfied with its condition; and that, even after the sale, he appeared to consider his bargain a good one. The court says: "It is clear, from the whole evidence, that the flatboats leaked in such a manner as to make its use as a ball room so inconvenient and imperfect that the plaintiff would not have purchased had he known this defect to exist. We cannot doubt that the defendant knew this defect; but, even if he did not, yet he could be bound to restore the price." See, also, 3 An. 4.

The plaintiff argues that the defendants had full opportunity "to examine the whole, whether they examined it or not. If they had an opportunity of doing so, and neglected it, they are barred from all claims." This is not law. If it were, commerce would lead to most dishonest practices. The rule would be, cheat if you can, whereas the law prescribes good faith and honesty in all transactions, and will not permit one man to enrich himself unjustly out of his neighbor. It implies, as we said in the opening of this argument, a promise or undertaking from him who sells, that all goods manufactured and sold by him for a specific purpose, and to be used in a particular way, are reasonably fit and proper for the purpose for which he professes to make them, and for which they are known to be required. 1 Parsons on Contracts, p. 469. The rule *careat vendidor* governs. See notes to 2 Kent, 480.

The oakum, in this case, was manufactured by the plaintiff. *Dyer*, plaintiff's witness, agent and vendor in this case, says: "It was a very poor quality." * * * "We did not make good oakum at the factory." * * * "I would call it oakum stock." * * "Oakum stock is the rope untwisted and picked without going through the gin. I have never seen oakum of such a low quality as that." *Murphy* says: "It was not oakum at all. It was pieces of rope cut, not spun, only picked by hand; it was not oakum fit for use; it could not be sold." *Anderson*, ship carpenter, says: "It would cost too much to pick it; it might be worth two or three cents; it was the sweepings of the place." *Connor*, ship carpenter, says: "It was not worth drayage. * * * It is called shakings." *Larkey* says: "It was not worth anything to him; it was part oakum, balance shakings, mostly dirt. It is called shakings, picked up; what was good for nothing, the good oakum having been picked out of it."

McGUIRE
*v.*
KEARNY ET AL.

The plaintiff endeavors to avoid the fraud practiced upon defendants, by asserting the defendants examined the oakum before making the purchase. The only evidence on this point is that of plaintiff's agent, *Dyer;* he says: "Mr. Kearny did not make much of an examination of the oakum; he pulled out a handful here and there, out of the bales. He did not open any bale. The bales were piled up eight or ten on top of each other, and it was impossible to make a thorough examination."

In *Harmony* v. *Wayer*, New York Supreme Court, quoted in note to 2 Kent, 661, it was held that, as the defendant had not an opportunity to examine the bulk of the article sold, he was entitled to expect a merchantable article.

In *Millaudon* v. *Price et al.*, 3 An. p. 1, the court said: "We do not consider that salt is an article which is susceptible of inspection or examination, as to its condition, without much trouble or inconvenience, and the vendor is bound to good faith; and, if he knows the article to be defective, he is bound to state the defects.

In *Richard & Alfred* v. *Edward Burke*, 7 An. 242, the court said: "The Article of the Code relied upon relates to such defects as are apparent to the senses, without opening boxes, barrels or packages to discover them by examination, and not to those which are concealed without this examination.

HOWELL, J. This suit was brought to recover the balance due on the sale of a lot of oakum, sold to defendants on 15th March, 1862.

The defence is that the article sold was represented to be similar to a lot previously bought by them from the same vendor, but that, on examination, it proved to be altogether inferior and wholly unmerchantable.

The evidence does not make out the defence.

It is shown that defendants saw the oakum several days before purchasing, and examined some of the bales or packages; and it is not proven that the interior was different from the exterior of the packages. At the time of the sale, it was known by defendants to be all of a "low quality." One of them contended that it ought to be sold lower, "owing to its inferior quality."

We see no reason for disagreeing with the judge who tried the cause in the lower court.

It is therefore ordered that the judgment be affirmed, with costs.